Are we still morning? Good morning. Good morning. Afternoon. Good morning, Your Honors. We're ten more minutes. Close, right? Right. Susan Alexander on behalf of the Automotive Industries Pension Trust Fund and the New England Teamsters and Trucking Pension Fund. I'm hoping to reserve three minutes for rebuttal. The claims in this case relate to a massive and admitted fraud involving a six-year restatement and $2.6 billion in earnings. The issues before this Court are the reasons that those merits were never heard. The District Court improperly dismissed the U.S. Exchange Act claims because when Morrison is applied, it is clear that the U.S. Exchange Act applies to domestic transactions of American depository shares. The District Court abused its discretion with respect to the Japanese Exchange Act claims where jurisdiction is uncontested. The District Court dismissed on comedy and form nonconvenience grounds articulating the correct standard but then watering it down and applying a different standard. So if it's okay with the Court, I'm going to start with the U.S. Exchange Act claims, the Morrison claims. The American depository share transactions are clearly covered as domestic transactions. So Morrison did away with the complex conduct and effects test and made the test about geography. If the transaction occurred in the United States, occurred domestically, the U.S. Exchange Act applies. Does the complaint currently allege domestic fraud and a domestic purchase? Yes. So there's no reason to amend the complaint that already alleges that? Absolutely. The American depository shares were all purchased and sold domestically. In fact, the District Court found that at ER23. The American depository transactions, I'm reading from his order, are securities transactions that occurred domestically. They were both sold and purchased in the United States. So there's no reason to amend. The District Court's error was in believing that Morrison didn't really mean it when it said it was doing away with conducts and effects and establishing a clear transactional test. The District Court grafted onto that an additional test of some additional conduct. And the mistake there, the error, respectfully, that the District Court made is that's personal jurisdiction. So that whole minimum contacts analysis and was Toshiba involved and what did Toshiba do or didn't do, that's minimum contacts analysis in a well-developed body of law related to personal jurisdiction, which was never challenged. So that shouldn't be at issue. The only question under Morrison is did the transaction occur domestically? The District Court found that it did. And based on Morrison, it's plain that the U.S. Exchange Act does apply to these transactions. So do American deposit shares qualify as a sale of any security registered on a national security exchange or any security not so registered, which is noted in the Morrison case? Yes. Why? It applies under both. Okay. But the easiest way is the second half of that sentence. So the easiest way is other securities that are transacted domestically, period, full stop, nothing more you have to look at. It also, our assertion is, and we have good support from the SEC and the Eleventh District of California, that over-the-counter exchanges are exchanges within the meaning of the first prong of Morrison. Okay. But if the Court finds that, if the Court has concerns about that, the second prong is the easy way to go because, and that was the goal of Morrison, was to take the confusion out of it and establish a clear transactional test. When the transaction occurs on a domestic market, when the transaction occurs domestically, the U.S. Exchange Act applies. Because the Court notes in Morrison, and it is in our view only transactions and securities listed on domestic exchanges and domestic transactions and other securities to which Section 10b applies. Right. It's the second half of that domestic transaction that's in other securities. Exactly. That is the language of Morrison. I have another question. Let's assume we find some improprieties in what the District Court did. What do you, what relief are you seeking through this Court? We would, we'd like to go back to the District Court and actually have the merits be heard because we've been fully dismissed with the erroneous order on the U.S. Exchange Act claims and then the abusive discretion on the Japanese Exchange Act claims. And what's interesting here is the, and the District Court was very candid about it, the U.S. Exchange, the error under the U.S. Exchange Act claims, the Morrison error, fully contaminated the Japanese Exchange Act abuses of discretion on comedy and form nonconvenience. If the Court's ready, I'll turn to those. Under comedy, so both of those decisions, the comedy and form nonconvenience decisions, applied, articulated the correct standard, but then didn't apply it. And under Hinkson, this Court's decision in Hinkson, that is an abuse of discretion. This Court under Colorado, the District Court under Colorado River had a general duty to adjudicate a controversy properly before it, and everyone agrees that the Japanese Exchange Act claims that the District Court had jurisdiction over those claims. So the Court exercised its exceptional discretion to dismiss under comedy, and it, it abused its discretion in three ways. First, the District Court never considered the most inherent consideration of comedy, which is deference to a foreign government, to a foreign legislature, to a foreign court, to something or somebody. And as this Court knows from the TEPCO decision that this Court recently decided, the Japanese government knows how to show up in this Court and say, we want this to be heard in our courts. That didn't happen here. There is nothing in the record, zero in the record of anything to which the District Court should be deferring, and yet the District Court just glossed over that primary consideration. There are two other additional abuses of discretion with respect to comedy. The District Court disregarded record evidence about how the Japanese courts work. So the District Court said that it was deferring to other lawsuits in Japan, and that Japanese courts are developing their interpretation of the relevant part of the Japanese Exchange Act. But in fact, the record evidence was to the contrary. The record evidence is that Japan operates on a civil law system where there isn't precedent, and there was evidence in the record at ER 638 in the Ishiguro Declaration that U.S. adjudication of the Japanese Exchange Act claims would have, quote, no precedential weight in Japan, close quote. So the District Court's holding was exactly the contrary of that. The third abuse of discretion on comedy was that the District Court purported to weigh factors and hold defendants to their severe burden of proof with respect to comedy, and yet never considered the fact that what we're talking about in this case is U.S. accounting law. Toshiba told its investors that it applied U.S. GAAP. It reported its results in U.S. dollars. So American accounting is what would be being applied here, and the District Court didn't even mention that. It was no part of the so-called balancing that was conducted. Those three considerations made the Court's comedy ruling an abuse of discretion. The forum nonconvenience dismissal was also an abuse of discretion, again, for three reasons. Again, the principal consideration under forum nonconvenience is deference to the plaintiff's choice of forum, where the plaintiff files in its home forum, as the American investors did in this case. That forum is presumptively entitled, presumptively considered convenient, presumptively considered convenient. And the District Court mentioned it, but glossed right over it. And instead of deferring to that, to what the Supreme Court called that strong presumption in Piper, or what this Court has also called presumptively convenient in Carajano, the District Court looked at what it thought would be more convenient. So rather than starting holding defendants to the burden to which they should have been held, the District Court sort of did its own balancing test. It failed to require, so the second abuse of discretion is that it failed to require defendants to show oppressiveness and vexation out of all proportion to the plaintiff's convenience. That burden was never met. In fact, the great weight of evidence actually supported having the case in the forum where plaintiffs brought it. The third abuse of discretion is that, again, the District Court made assumptions about the record, which were contrary to what was actually there. So the District Court made assumptions about witness availability and whether or not evidence or witnesses would be available when there was literally nothing in the record that said that witnesses were unavailable. As in Carajano, the defendants simply put forward a list of people that don't live in the United States and said that that should be enough to carry their strong burden of oppressiveness and vexation out of all proportion to the plaintiff's convenience. Again, the actual reasonable balance of factors would include the fact, in addition to plaintiff's choice of form, would include the fact that the main facts here have already been published and admitted. There's an independent investigation report in Japan. It's been translated into English. It contains the facts and Toshiba has admitted them. So there's not a big evidentiary issue related to Japan. The bulk of the remaining discovery is going to be related to the Westinghouse business in the United States. Unless the Court has further questions, I'd like to save the rest of my time for rebuttal. Thank you. May it please the Court. Christopher Curran for Toshiba. Toshiba, of course, is a corporation incorporated under the laws of Japan as its principal place of business in Japan. It has issued its stock and listed it only on stock exchanges in Japan. It is regulated by those stock exchanges and also by the Financial Services Agency of Japan. And the SCSC, the Securities Exchange and Surveillance Commission of Japan. Those basic facts that I've just stated are a sufficient basis for this Court to affirm the district court's sound ruling, both as to the inapplicability of the U.S. Securities Exchange Act and as to the claims based on Japan law. Like Ms. Alexander did, I'd like to address first the U.S. Securities Exchange Act claims, and beginning with Morrison. Morrison, of course, sets the two prongs that have already been alluded to. The first prong being whether it's a transaction in a security listed on a U.S. National Securities Exchange. Here I submit it's not even a close question. There's the over-the-counter market is not a national securities exchange. It's not even an exchange, and securities aren't listed on the OTC market. The OTC market is a trading platform set up by broker-dealers. The companies such as Toshiba do not list themselves, and they are not subject to exchange rules and regulations and listing requirements. I think our brief sets forth the provisions of the Securities Exchange Act and the rules and regulations there under that establish that point. The Third Circuit in the Giorgio decision reached the correct conclusion, finding that securities traded on the over-the-counter market are not traded or listed on a national securities exchange. Turning to the second prong, the prong as to whether it's otherwise a security traded domestically. Here again, the district court was correct in concluding that Toshiba's stock is not such a security and that Toshiba was not a participant in any such transaction. Ms. Alexander, consistent with the plaintiff's briefs to this court and the briefs below, focuses on the fact that the ADRs that certain of the plaintiffs purchased were purchased in the United States. And District Judge Pregerson acknowledged that correctly, and we acknowledge that. There's no question that those transactions took place in the United States. But that's not enough under Morrison. Morrison's core holding was that the U.S. Securities Exchange Act does not apply extraterritorially. The plaintiffs here are seeking to apply the U.S. Exchange Act extraterritorially to Toshiba, a foreign issuer that has never entered the U.S. securities market at all. It would be nothing short of a perversion of Morrison to suggest that a foreign issuer would have done anything at all in the United States in the securities market here. Isn't there some potential error here by the district court because it dismissed with prejudice and didn't allow an amendment under Rule 15, because amendments are supposed to be liberally granted? I mean, shouldn't the district court, if it had concerns about this, permitted the plaintiffs to amend? And shouldn't that concern us? Well, ordinarily perhaps, but here are a couple of things. Number one, this is a first amended complaint we're reviewing. It's already been amended once, but separate from that, the plaintiffs did not identify any basis upon which they could add allegations that would cure the defect. And in fact, it's hard to imagine there could be a cure to this because the first amended complaint alleges all of the facts that I said in my little opening spiel about Toshiba being a foreign corporation and listing and selling its stock only overseas. The plaintiffs have acknowledged in their briefs to this court, I think it's on page 32, that they don't allege or contend that Toshiba did anything in the United States. Under those circumstances, the defects of the first amended complaint cannot be cured. It's apparent as a matter of law that the U.S. Exchange Act does not apply to Toshiba or to any other foreign issuer that has refrained from transacting in securities in this country. In fact, Morrison says as much. Morrison relies heavily on Section 30 of the Exchange Act, which is 78DD, and specifically Section 30B, which provides that the Securities Exchange Act does not apply to transactions or to persons who transact in securities only outside the United States. That's what Toshiba does. Toshiba hasn't done anything in the United States. The ADRs that the plaintiffs purchased are synthetic securities created by strangers. My understanding is because the deception took place in Japan, but the sales of the ADRs took place in the United States. We look, we can't, the people who purchased the ADRs in the United States can't try to hold Toshiba liable for its deceptions. Well, that's correct, but I think I need to amplify in the reasoning for that. It's not that the, we're not relying on the location of the alleged fraudulent conduct. It's nice to say that, but it's kind of, I mean, Toshiba's had to write down its stock, I don't know how many times, the value of its stock, I don't know how many times, because it purchased Westinghouse and then Fukushima happened. Its stock listed in Japan. Right, and there's like acknowledged deception there, but if there's a clear rule to me that comes out of Morrison, it's that you look to determine whether 10B is applicable, you look to the place, the location of the purchase, and here we have a U.S. citizen purchasing from a U.S. bank, and the ADRs are domestic transactions sold in the U.S. by a U.S. bank to U.S. citizens. Why doesn't that fall under Morrison? Because Toshiba was not a party or had any role in connection with that transaction. Morrison precludes the extraterritorial application of the Exchange Act. All of Toshiba's conduct, all of its securities conduct, has been in Japan. So any attempt to apply the Exchange Act to Toshiba is necessarily an extraterritorial application. But all the representations by Toshiba reach the United States, and that's what the U.S. purchasers were relying on was representations, alleged misrepresentations of Toshiba when they purchased the ADRs. Well, the ADR purchasers did not transact business with Toshiba. They did not transact in securities with Toshiba. Obviously. That's what I said. That's the premise of my thing. They were sold in the U.S. by a U.S. bank to U.S. citizens. That's not the whole picture. Well, OK, but first of all, let's view this in terms of reasonableness and fairness from both perspectives, right? First, the foreign issuer who stays out of the United States. Is it appropriate for that foreign issuer to be brought in and subject to the U.S. Securities Exchange Act when it hasn't done anything in the United States? Well, it sold some of its shares to the banks that are holding them in deposit, apparently. Well, apparently those banks bought the shares on the Tokyo Stock Exchange. But they still sold those shares. Right, right. But Toshiba did nothing in the United States. Expecting that perhaps they'd be purchased as ADRs. OK, but remember, these ADRs are unsponsored, right? Well, if you're doing something in the United States that makes Toshiba subject to the U.S. Exchange Act, that's prohibited by Morrison. No, what makes Toshiba subject to it is that it made alleged misrepresentations that reached the United States and promised United States purchasers were lied. I mean, that's what they're arguing. OK, I do think that the scenario you're envisioning is an extraterritorial application of the Exchange Act. And the Second Circuit has said as much, right? But that case is very different, isn't it? Well, let's see. So if I may draw an analogy. That's the swap agreement. Yeah, that's the Park Central case involving Porsche, where synthetic securities were created in the United States and the suit was brought against Porsche, which hadn't participated in that transaction at all. And the Second Circuit said, hey, yeah, the two prongs of Morrison are necessary for there to be a claim under the U.S. Securities Exchange Act. But that's not sufficient. You can't use a domestic transaction among strangers to drag into the Exchange Act a foreign issuer. And the Second Circuit said that that's prohibited under Morrison. And we're advancing the exact same argument here, the same type of synthetic security and the same complete restraint on the part of the foreign issuer about entering in the United States. Morrison is premised on the notion that the application of the Exchange Act under these circumstances is offensive and intrusive to the foreign regulation. And that theme underscored not only Morrison, but also Park Central. And it's the same circumstance here. Any attempt to invoke the Exchange Act against Toshiba, a stranger to all transactions in the U.S., necessarily interferes with the securities and application of Japan law to a Japan issuer. And then one other point. I mentioned I was going to consider the fairness and reasonableness from both perspectives. When a U.S. person or someone else buys an ADR in the United States and it's unsponsored, they know they're not dealing with the foreign issuer. They should understand that the foreign issuer hasn't come to the United States and submitted itself to the Exchange Act. Under those circumstances, it's fair and appropriate that that purchaser of the ADR look to Japan and Japan law for any remedies they may have. And in fact, that's presumably what's happening in these lawsuits brought in Japan. So, again, the notion that strangers can create liability under the Exchange Act for a foreign issuer is too much for Morrison to bear. It would require the extraterritorial application of the Exchange Act in a way that Morrison forbids. Well, let me ask a question. These ADRs, they are held by banks in the U.S., correct? Created and held. And are these actual shares of Toshiba stock? Aren't they shares of Toshiba stock? No. The ADRs are securities that are based on a bundle of actual Toshiba securities. So the depository banks buy the stock, presumably on the Tokyo Stock Exchange, bring it to the U.S., package it up, I think it's a 5 to 1 or 6 to 1 ratio, sell an ADR whose value tracks the value of the Toshiba bundle of shares. Well, if someone buys those shares that are held in the U.S. bank's repository, doesn't that mean they're being bought domestically? Yes. Okay. And why doesn't that qualify under Park Central's interpretation of Morrison? Because it says here, on appeal there was another case that was decided, but anyway, the Second Circuit notes, on appeal we concluded that a securities transaction is domestic and the parties incur irrevocable liability to carry out the transaction in the United States or when title is passed within the United States. Therefore, in order to adequately allege the existence of a domestic transaction under Morrison, it is sufficient for plaintiff to allege facts leading to the plausible inference that the parties incur irrevocable liability within the United States, that is, that the purchaser incurred irrevocable liability within the United States to take and pay for security or that the seller incurred irrevocable liability within the United States to deliver security. Right. And Park Central went on to dismiss the claims there, even though the transaction took place in the United States. It's the exact same here. As I said before, we don't dispute that the ADR transaction was a domestic transaction, but that's not enough. And that's what Park Central says. I think you were probably, the court there was probably discussing that activist case in the part you were reading. That case dealt with specifically what constitutes a domestic transaction. Here we concede that the ADR purchase transaction is domestic. If the plaintiffs have a beef with their counterparty in that ADR transaction, they should go for it and they should rely upon the U.S. Exchange Act. But they can't bring in a stranger to that transaction, Toshiba from Japan, and make them subject to the Exchange Act based on the initiative of these depository banks. Let me just note, though, what the court ultimately says in Park Central. We therefore affirm the district court's dismissal of the complaints, recognizing, however, that our decisions here and in absolute activists have elaborated on the standards set forth in Morrison in such a way that plaintiffs might conceivably be able to draft amended complaints that would invoke a domestic application of Section 10b. We remand to allow the district court to entertain a motion to amend the complaints. Right. Why shouldn't we do that here? Because you should look at what happened later in Park Central. After the remand, the plaintiffs gave up. They said it was futile, they couldn't do anything else, and the case was dismissed. Same thing here. There's no way to cure this fundamental problem. And the plaintiffs didn't identify one. So that's why District Judge Preggerson was stated in his opinion that he wasn't going to grant leave to amend because only speculation and futility was envisioned in further proceedings. I see my time's up, but I'm happy to answer any further questions if there are any. Thank you very much. Thank you. Okay. Just quickly, Your Honors, three points. First, this is not a swap agreement, which is what was at issue in the per curiam limited to its facts district opinion in Park Central. This court in Reese v. Malone has held that the U.S. Exchange Act applies to ADRs. This court has applied the U.S. Exchange Act to ADRs. I just heard Counsel for Toshiba say that we all agree this was a domestic transaction. And that's why the court is exactly right. The way we brought these claims are the purchases, the transactions that occurred in the United States were brought under the U.S. Exchange Act. The transactions that occurred in Japan were brought under the Japanese Exchange Act. That is exactly, exactly what Morrison requires. Second. Let me ask a question. If you are allowed to amend, will you amend, and if so, what might you say, without speculating? That's any different from what's in the existing first amendment complaint. Right. So Toshiba's conduct and Toshiba's involvement in creation of these ADRs is, in our view of the law, completely irrelevant. In our view, that has to do with personal jurisdiction and not application of the U.S. Exchange Act. But it is possible, if we were allowed discovery, that we could find out that the fact that one bank, the Bank of Mellon, bought 51, I'm terrible at these numbers, 51,000, 51 million shares of stock, unlikely happened without Toshiba's knowledge. So it's quite likely that discovery, if we were allowed discovery, that it would show that, of course, Toshiba was involved in that. But again, in our view, the law makes that unnecessary. Counsel, what I was trying to get to in my earlier question is, does the complaint currently allege a sufficient connection between Toshiba's alleged fraud and the domestic purchase of the ADRs, AIDs? What does it allege with respect to that? So the price of the ADRs, I believe it's paragraph 251 of the complaint, alleges that the price of the ADRs moved in tandem with the price of 6502, which is the common shares that traded on the Japanese exchange. And so Toshiba's fraud inflated the stock price of both the common share and, in tandem, the ADRs. So Toshiba's fraud, the fraudulent behavior, is what was in connection with the domestic transaction. So, one, the fact that the transaction was domestic, that part has to do with why the U.S. Exchange Act applies. It applies to the ADRs. Toshiba's conduct, which Morrison says no longer has to do with the application of the U.S. Exchange Act, but that has to do with Toshiba's liability, which has never been heard because the district court made these errors and also abused its discretion with respect to both comity and form nonconvenience. And the only other point that I would like to make on form nonconvenience is that if this Court's where-is-it-more-convenient ruling were the standard for form nonconvenience, the courts in this circuit would never hear any issue involving foreign law. And as this Court knows, that happens all the time. Thank you, Your Honors. Thank you very much. The case just argued will be submitted. Thank you both very much for really excellent arguments, and the Court will take the case under submission and adjourn for today.
judges: Reinhardt, Wardlaw, Daniel